IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BUSHTEC PRODUCTS CORP., | |
| Plaintiff, | Case No. 2:15-cv-622 |
| v. | Judge Graham |
| KOMFORT KRUZ, LLC, et al., | Magistrate Judge Jolson |
| Defendants. | |

## Opinion & Order

This matter is before the Court on a variety of motions: (1) Defendant Jerett Bell's Motion to Dismiss, (Doc. 11); (2) Plaintiff Bushtec Products Corporation ("Bushtec")'s Motion to Lift Entry of Default, (Doc. 18); (3) Plaintiff Bushtec's (identical) Motions for Leave to File Answer to Counterclaim, *Instanter*, (Docs. 19, 20); (4) Plaintiff Bushtec's Motion for Leave to File Amended Complaint and Opposition to Jerett Bell's Motion to Dismiss, (Doc. 22), and (5) Defendants' Motion for Attorneys' Fees and Costs.[1] (Defs.' Resp. in Opp'n at 3, doc. 24).

### I. Background

#### A. Factual Allegations

This case is about an asset purchase gone awry. Defendant, Komfort Kruz, LLC, ("Komfort Kruz") manufactured, sold, and installed motorcycle trike conversion kits.[2] (Compl. at ¶ 3, doc. 1; Answer at ¶ 3, doc. 8). Individual defendants, LaNell Bell and David Bell are the owners and members of Komfort Kruz; individual defendant Jerett Bell is not an owner or

---

[1] Defendants have filed no separate motion for attorneys' fees and costs, nor have they moved for Rule 11 sanctions. *See* Fed. R. Civ. P. 11(c)(2) (motion for sanctions).
[2] A trike conversion kit attaches to a motorcycle and includes a hitch and two wheels located outside the motorcycle's rear wheel. (Asset Purchase Agreement at 3, doc. 1-1).

1

member of Komfort Kruz, but he is "key employee" of Komfort Kruz (collectively, "Defendants"). Bushtec and Komfort Kruz executed an Asset Purchase Agreement (the "Agreement") where Bushtec agreed to pay up to $1,000,000 for Komfort Kruz's assets related to its trike-conversion-kit business. (Asset Purchase Agreement at ¶ 3, doc. 1-1). A particularly valuable part of the assets—or so Bushtec thought—were the "Masters and Parts Sets," which were used to build conversion kits for different types of motorcycles. (*See* Schedule 1(a-1) to Asset Purchase Agreement at 14–16, doc. 1-1). The parties also agreed to an "Earnout Agreement," which is "an agreement for the sale of a business whereby the buyer first pays an agreed amount up front, leaving the final purchase price to be determined by the business's future profits." *Black's Law Dictionary* 621 (10th ed. 2014). Problems sprang up immediately after the asset purchase in December 2013.

In late January 2014, Komfort Kruz failed to attend a motorcycle show that it agreed to attend to train Bushtec employees on its new product. (Compl. at ¶ 17). The same thing happened in March 2014. (Compl. at ¶ 18). When Bushtec personnel had questions about their new product, they tried to call Komfort Kruz staff for further information and training, often to no avail. (Compl. at ¶ 23). Ultimately, Bushtec sold far fewer of the conversion kits than it believed it would. Bushtec alleges that Komfort Kruz greatly exaggerated its sales figures. (Compl. at ¶¶ 12–15). These allegations, in part, form the basis for Bushtec's negligent-misrepresentation claims.

Bushtec also asserts claims for breach of contract. It alleges that Komfort Kruz never provided many pieces of personal and intellectual property, including computers, data contained on a computer hard drive, whole or pieces of master conversion kits, and instructions and part details for the kits. Because Komfort Kruz never provided this information, Bushtec could not

2

promptly fill orders; and because it could not promptly fill orders, it lost the business of its largest customer.

Komfort Kruz asserts counterclaims for breach of contract and for breach of the covenant of good faith and fair dealing. Komfort Kruz alleges that Bushtec failed to pay it the full purchase price agreed to in the asset purchase agreement, primarily because of its failure to maximize sales as required by the Earnout Agreement.

In summary, Bushtec alleges that it did not get what it paid for, and if not for the misrepresentations by Komfort Kruz, it would not have made the asset purchase. Finally, Bushtec alleges Defendants are preparing to open a new trike-conversion-kit business once they rescind the Agreement because of Bushtec's alleged failure to pay the entire purchase price.

### B. Procedural Background

Bushtec filed its complaint in February 2015 and failed to serve the complaint to Defendants until July 2015. Komfort Kruz, LaNell Bell, and David Bell responded with answers, each of which included counterclaims. Defendant Jerett Bell filed a motion to dismiss in August. Bushtec did not respond to the counterclaims or the motion to dismiss. In early December, Defendants moved for, and the Clerk entered, a default against Bushtec. (Docs. 16, 17). Only then did Bushtec respond and, in late December, filed the flurry of motions that are now before the Court.

Bushtec has neglected deadlines throughout this litigation. Four instances of this bear description.

First, Bushtec failed to serve Defendants with its complaint until prompted by a show-cause order on why the action should not be dismissed for failure of service. (Doc. 2). The show-cause order was filed more than four months after Bushtec filed its complaint.

Second, Bushtec attempted to file its answer four months after it was due. Komfort Kruz, LaNell Bell, and David Bell filed their counterclaims on August 3, 2015. Bushtec did not timely respond, and the Clerk entered a default on December 9, 2015. Bushtec moved to set aside the default and for leave to file its answer to the counterclaim on December 28, 2015.

Third, Bushtec was late to file its response to defendant Jerett Bell's motion to dismiss. Bell filed his motion on August 3, 2015, Bushtec's response was due on September 30, 2015, and Bushtec attempted to file its response on December 31, 2015. (Docs. 11, 22). Bell has not yet had an opportunity to reply.

Fourth, Bushtec failed to timely submit its initial disclosures. After the parties' preliminary pretrial conference, the magistrate set a deadline for Rule 26 disclosures for October 20, 2015. (Preliminary Pretrial Order at 2, doc. 14). Bushtec did not provide its Rule 26 disclosures until February 1, 2016. (Notice of Filing, Bushtec Initial Disclosures, doc. 30).

Bushtec provides precious little information regarding its failure to meet the Court's deadlines. Bushtec claims that its "delay was inadvertent" and that it was an "unfortunate oversight in relation to the press of business." (Pl.'s Combined Reply in Support of Various Motions at 2, doc. 29). Defendants, in response to Bushtec's motions, move the Court to "order Bushtec to reimburse Defendants for the costs incurred as a result of Bushtec's conduct." (Defs.' Resp. in Opp'n to Pl.'s Motions at 3, doc. 24).

## II. Discussion

### A. Bushtec's Motion to Lift Entry of Default

The Clerk entered a default against Bushtec on Defendants' counterclaims because Bushtec failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a). Bushtec moved to lift the entry of default more than four months after its answer was due.

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). Determining good cause requires the analysis of three "well-established factors": "whether (1) the default was willful, (2) a set-aside would prejudice [the non-defaulting party], and (3) the alleged defense was meritorious." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838–39 (6th Cir. 2011). This "lenient" standard encourages setting aside defaults in favor of judgments on the merits. *See id.* at 840–41.

A court may infer that a default is willful if a defendant displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.* at 841 (quoting *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)). This requires more than mere negligence or a failure to act reasonably. While Bushtec has sometimes participated in this lawsuit—a lawsuit it filed—it has neglected deadlines since filing its complaint. Bushtec's only excuse is "inadvertence" due to the "press of business." While Bushtec was certainly negligent, the Court is not convinced that Bushtec's default was willful; therefore, this factor weighs in favor of setting aside the default.

To show prejudice, neither delay nor increased litigation costs are sufficient; "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* at 842 (quoting *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). Defendants only present one fact

relevant to this inquiry, and they describe it as creating increased difficulties of discovery: Defendants argue that Bushtec's failure to timely provide its initial disclosures gives it an unfair advantage in discovery. (Defs.' Resp. in Opp'n at 3, doc. 24). But, there are no allegations of spoliation of evidence, fraud, or collusion. Whatever unfair advantage this delay has given Bushtec is minimal. This factor weighs in favor of granting the motion to lift the default.

"[A] defense is meritorious if 'there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 326 (6th Cir. 2010) (quoting *Burrell v. Henderson,* 434 F.3d 826, 834 (6th Cir. 2006)). "[A]ll that is needed is a hint of a suggestion which, proven at trial, would constitute a complete defense." *Id.* (quoting *INVST Fin. Group*, 815 F.2d at 399) (internal quotation marks omitted). Defendants present no argument on this factor. The counterclaims at issue are, essentially, that Bushtec failed to pay the agreed purchase price for the assets. Bushtec's defense is that defendants breached the agreement first, which discharged Bushtec from further performance. This is more than just a "hint of a suggestion" of a complete defense to the counterclaims. *See* 18 Ohio Jur. 3d *Contracts* § 270 ("a default or failure in a substantial particular on the part of one party to a contract authorizes the other party to rescind."). This factor weighs in favor of granting the motion to lift the default.

In summary, the factors weigh in favor of lifting the default. To the extent any prejudice to Defendants exists, it is outweighed by the other factors. Therefore, Bushtec's Motion to Lift Entry of Default is granted.

### B. Bushtec's Motion for Leave to File Answer to Counterclaims, *Instanter*

Next, Bushtec moves for leave to file an answer to Defendants' counterclaims. (Docs. 19, 20). Defendants present no legal argument in support of their opposition to this motion and

instead rely on their opposition to Bushtec's motion to lift the entry of default. (Defs.' Resp. in Opp'n, doc. 24).

The Court may extend the time to file "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

> [T]he governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)); *but see United States v. Munoz*, 605 F.3d 359, 368 (6th Cir. 2010) (reasoning that "the reason for the delay" and "whether the delay was within the reasonable control of the moving party" are a "single factor").

Bushtec concedes that the length of the delay is problematic and that the delay was within its reasonable control. It disputes, however, that defendants will be prejudiced, that the delay has the potential for great impact on the proceedings, and that it acted in bad faith.

### 1. Danger of prejudice to Defendants

There is little danger of prejudice: Bushtec's answer would not introduce a novel path for the case to go down, it would only assert as a defense facts already alleged in its complaint. This factor weighs in favor of finding excusable neglect.

### 2. Length of delay and potential impact on judicial proceedings

Bushtec caused lengthy delays. But the length of the delays has not and will not greatly impact the proceedings: it would not largely change claims or defenses in the case, it would not greatly impact discovery, nor would it moot extensively briefed dispositive motions. This factor weighs in favor of finding excusable neglect.

### 3. Reason for delay and whether delay was within Bushtec's control

Bushtec provides little reason for its delay other than inadvertence, which is not a good reason. Bushtec concedes the delay was within its control. Therefore, this factor weighs against finding excusable neglect.

### 4. Whether Bushtec acted in good faith

Bushtec argues that it acted in good faith. It points to its attendance at the initial pretrial conference and its filing of the instant motions as evidence of its good faith. This is thin evidence of good faith, but lacking evidence of bad faith on the part of Bushtec, this factor weighs in favor of finding excusable neglect.

The majority of the factors favor a finding of excusable neglect, and given the strong preference for deciding cases on their merits, the Court finds that Bushtec's neglect is excusable and its Motion to File Answer to Counterclaims is granted.

### C. Bushtec's Motion for Leave to File Amended Complaint

Bushtec also moves for leave to file an amended complaint. (Doc. 22). "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). While freely granting leave to amend is the axiom, "denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

The situations described in *Glazer* do not exist here. Bushtec filed its motion for leave to amend the complaint by the deadline established in the preliminary pretrial order. (Preliminary

Pretrial Order at 3, doc. 14) (Motions to Amend due by 12/31/15). While Bushtec's other delays are well-documented, there is no evidence of bad faith or dilatory motive on its part, it has not yet amended its complaint, Defendants have not shown they will suffer any significant prejudice by virtue of allowing the amendment, nor is the amendment futile. The Court will now analyze the two main amendments Bushtec proposes.

The original complaint was "silent as to the basis for jurisdiction over Defendant Jerett Bell." (Bell's Mot. to Dismiss at 1, doc. 11). Bushtec, in its amended complaint, attempts to cure this silence by alleging more clearly that Jerett Bell was an "employee and agent of Komfort Kruz." (Proposed Am. Compl. at ¶ 5, doc. 22-1). This may be a futile amendment, but the Court will reserve judgment on that issue at this time.

The First Amended Complaint would also add a claim for conversion against Defendants. (First Am. Compl. at ¶¶ 84–88, doc. 22-1). Bushtec argues that the claim is a new claim, but it is based on facts already alleged in the complaint. Bushtec alleges that Defendants converted its property by wrongfully withholding, and refusing to provide Bushtec with, items included in the asset purchase, including computers and their contents. Bushtec's original complaint contains numerous allegations regarding computer hardware withheld and this claim is not based on new factual allegations, only on a new theory of recovery. (*See* Compl. at ¶ 31) ("computers from the Trigg business were supposed to be included in the sale assets.").

Given the liberal standard for granting leave to amend, Bushtec's Motion for Leave to File Amended Complaint is granted.

### D. Motion for attorneys' fees and costs

Defendants "additionally would move the Court to order Bushtec to reimburse Defendants for the costs incurred as a result of Bushtec's conduct." (Defs.' Resp. in Opp'n at 3, doc. 24).

9

They argue that this Court has previously conditioned the setting aside of a default on the defaulting party's reimbursement of plaintiff's costs and attorney's fees incurred. *See Pavuk v. U.S. Bank Nat. Ass'n ND*, No. 2:09-CV-00514, 2010 WL 518165, at *4 (S.D. Ohio Feb. 3, 2010). "[A] district court has authority to condition the setting aside of a default upon payment of attorneys' fees and costs under Fed. R. Civ. P. 55(c)." *Winslow v. Kalamazoo Pub. Sch.*, No. 107-CV-65, 2007 WL 1701796, at *2 (W.D. Mich. June 11, 2007) (quoting *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988)); *see also Pavuk* at *5. While courts typically use this authority when a non-defaulting party has already filed a dispositive motion, s*ee id.* at *1 (motion for default judgment pending); *Amari v. Spillan*, No. 2:08-CV-829, 2009 WL 5216042, at *5 (S.D. Ohio Dec. 29, 2009) (motion for summary judgment pending), no bright-line rule exists.

Here, Bushtec—the Plaintiff—has repeatedly delayed the proceedings. Bushtec brought Komfort Kruz to court and forced it to expend resources to move for entry of default and oppose lifting the default. Bushtec should foot the bill for that work, not Defendants. Defendants' motion for attorneys' fees and costs is granted to the extent of its expenditure in preparing its Request for Entry of Default, (Doc. 16), and its response in opposition to Bushtec's Motion to Lift Entry of Default. (Doc. 24).

The parties have until March 31, 2016 in which to agree to the amount due Defendants for their costs and attorney fees incurred in the filing of the above-referenced documents. If the parties cannot agree, Defendants shall file with the Court an itemized list of their costs and attorneys' fees, and the Court will decide the dispute.

### E. Defendant Jerett Bell's motion to dismiss

Because the Court granted Bushtec's Motion to File Amended Complaint, Jerett Bell's Motion to Dismiss, filed based on the original complaint, is denied without prejudice. Bell may refile, addressing the First Amended Complaint.

### III. Conclusion

1) Bushtec's Motion to Lift Default is **GRANTED** on the condition that Bushtec pay Defendants' attorneys' fees and costs as previously described. (Doc. 18).

2) Bushtec's Motion for Leave to File Answer to Counterclaims, *Instanter* is **GRANTED**. The Clerk is directed to file Bushtec's Answer, (doc. 20-1), under a separate docket number. Bushtec's nearly identical Motion, (Doc. 19), is **DENIED** as moot.

3) Bushtec's Motion for Leave to File Amended Complaint and Opposition to Jerett Bell's Motion to Dismiss is **GRANTED**. (Doc. 22). The Clerk is directed to file Bushtec's First Amended Complaint, (doc. 22-1), under a separate docket number.

4) Defendant Jerett Bell's Motion to Dismiss is **DENIED WITHOUT PREJUDICE**. (Doc. 11).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 11, 2016